Estate of Arthur D. Haley, Deceased, Gerald T. Burns and Will McFarlane, Executors v. Commissioner.
Estate of Arthur D. Haley v. Commissioner
Docket No. 12552.
United States Tax Court
1948 Tax Ct. Memo LEXIS 76; 7 T.C.M. (CCH) 691; T.C.M. (RIA) 48191; September 30, 1948
David S. Pattullo, Esq., for the petitioner. R. G. Harless, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Petitioner is the Estate of Arthur D. Haley, Deceased. The Commissioner determined a deficiency of $12,931.06 in the estate tax of petitioner by disallowing bequests made by decedent in his will to named trustees for the maintenance, improvement, etc., of designated cemeteries, which bequests petitioner claims, and respondent denies, were deductible under section 812(d) of the Code. This is the sole issue. *77 Findings of Fact The decedent, Arthur D. Haley, a resident of Condon, Gilliam County, Oregon, died testate on July 16, 1943. He was a citizen of the United States and about eighty years of age at the time of his death, and was never married. His will, dated January 16, 1940, was duly probated and executors appointed, and the estate tax return was duly filed with the collector of internal revenue at Portland, Oregon. His will made bequests to various individuals, the aggregate of which was slightly more than one-tenth of the net value of the entire estate. By paragraph 11 of his will decedent gave and bequeathed, in fractional shares, all of the residue of his estate to named trustees, to be held in trust in perpetuity, the income or interest from each share to be used and expended "for the maintenance, improvement, enlargement and beautification of" each of nine separately designated cemeteries, and a separate trustee was named for each of said cemeteries. The residuary estate had a value of approximately $130,000. A list of the residual legatees, the cemeteries involved, the share bequeathed to each and the trustee for each is as follows: Name of Trustee
Cemetery
Share
1. Chebogue Cemetery, a Chebogue Cemetery, Yarmouth, 1/6
corporation  Nova Scotia  2. Bishop of Diocese of Baker
St. Joseph's Cemetery, Condon,
1/6 City, Oregon, a corporation sole  Oregon   3. Trustees of Mayville Lodge,
I.O.O.F. Cemetery, Mayville, 1/12
#81, I.O.O.F.  Oregon   4. Trustees of Mayville Lodge, #81, I.O.O.F.
I.O.O.F. Cemetery, Condon, Oregon
1/12
5. Trustees of Igo Grange #315
Igo Grange Cemetery, Alville, Oregon
1/6
6. Fossil Lodge, #110, I.O.O.F., a corpora-
tion
Fossil Cemetery, Fossil, Oregon
1/12
7. Masonic Cemetery Association, a corpora-
tion
Masonic Cemetery, Fossil, Oregon
1/12
8. Trustees of Mt. Moriah Lodge, #95, A.F.
& A.M.
Masonic Cemetery, Condon, Oregon
1/12
9. Trustees of Endymion Lodge, #66, Knights
of Pythias
Knights of Pythias Cemetery, Condon, Ore-
gon
1/12
*78 Of the above named beneficiaries only seven of the nine are in controversy. Number "1" was waived and not contested by petitioner, and in No. "2" deduction was allowed by respondent. Also as to No. "5", the petitioner offered no evidence. All of the cemeteries here involved are small, rural cemeteries located in sparsely settled sections of the state, Condon and Mayville (both in Gilliam County) having a population of about 1,000 each and Fossil (in an adjoining county) about 650. Each cemetery is owned and operated by the lodge named as trustee. The cemeteries "4", "8" and "9', all located a Condon, have a total area of about 6 acres, each cemetery being separated by a driveway and the whole being enclosed within one steel fence. Some of the cemeteries involved have one section for burial of deceased members of the various lodges and another section for public burial. Neither the town of Condon or Fossil, nor the counties in which they are located own or operate cemeteries and the cemeteries in question are the only ones in that area for burial of the dead. The County of Gilliam since 1915 has purchased three lots in the Masonic Cemetery at Condon. Burial in these cemeteries *79 is not limited to members of the lodges or sponsoring organizations, but is open to all, regardless of race, color or religion, and in all of them free burial is accorded to the indigent. Free burial occurs only occasionally; generally burial lots are purchased. The lots vary in size, and the average price is from $5 to $10 per lot, and each lot will accommodate from 4 to 8 graves. No charge is made against the owners of the lots for maintenance or upkeep; there are no dues and the proceeds from the sales of lots are used in their upkeep, but these are insufficient and the maintenance of the cemeteries is provided by gratuitous and voluntary services at intervals by members of the lodges. No lodge or individual receives remuneration or profit from the cemeteries. Decedent was not a member of any of the lodges or organizations named as trustees. His will directed that no religious services or ceremonies be held over his remains, and that his body be cremated and the ashes "scattered on the waters of the Columbia River at or near its mouth." The Masonic Cemetery Association, which maintains a cemetery at Fossil, Oregon, is a corporation. The Independent Order of Odd Fellows, the *80 Ancient Free and Accepted Order of Masons, and the Knights of Pythias are all fraternal societies which operate under the lodge system, and the purposes of which are fraternal and benevolent, and to cement fellowship and brotherly love among its members. [Opinion] Whether the petitioner is entitled to deduct the value of the bequests to the seven cemeteries here involved is dependent upon whether or not such bequests are embraced within the terms of section 812(d) of the Code, wherein deductions are allowed as therein prescribed in computing the net value of an estate for estate tax purposes. Petitioner relies upon that portion of 812 (d) which authorizes deduction from the value of the gross estate the amount of all bequests, "* * * to a trustee or trustees, or a fraternal society, order, or association operating under the lodge system, but only if such contributions or gifts are to be used by such trustee or trustees, or by such fraternal society, order, or association, exclusively for religious, charitable, scientific, literary, or educational purposes * * *." [Italics supplied.] The test here is whether or not funds expended in "the maintenance, improvement, enlargement *81 and beautification" of these cemeteries are used exclusively for charitable purposes. In interpreting and applying substantially the same language in the Internal Revenue Code as that here involved, relating both to deductions for income tax and also to estate tax, it has been held that a cemetery, even though not operated for profit or gain, where lots therein are sold for burial purposes, is not operated exclusively for charitable purposes within the meaning of the Code, and contributions thereto are not deductible. See ; ; . The essential facts in the instant case are not distinguishable from those in the cases cited. In Paul's Federal Estate and Gift Taxation, Vol. 1, at page 661, section 12.15, is an editorial comment to the effect that transfers to a cemetery are not deductible because the organization is not for charitable purposes, but for cemetery purposes. Petitioner and respondent both cite , cert. denied , affirming the Board of Tax Appeals' *82 denial of deductibility in estate tax of bequest for maintenance, etc., to a cemetery on the ground that it was not used exclusively for religious or charitable purposes. The decision reached, the material facts therein and the reasoning on which the conclusion is based sustain respondent's position here, rather than that of the petitioner. Petitioner takes comfort from a single sentence of the Circuit Court's opinion, to the effect that a cemetery association doubtless could be so organized and operated as to be a charitable organization within the meaning of the act, but that it appears that no free burial space is ever provided here or that less than fair value is ever charged for burial rights or upkeep. This sentence, when considered with the entire record in the Gund case and the opinion as a whole, indicates that the court was undoubtedly visualizing a situation where the donation or free burial space was the rule rather than the exception. We do not think that the court by this sentence meant to hold or imply that the occasional free burial of indigent persons, either in the lots owned by the county for that purpose, or in other space used therefor, such as the facts here, *83 would stamp the cemetery as one operated exclusively for charitable purposes. As was said in : "The fact that no one, who could pay the price, was excluded from becoming a purchaser of a lot, or, if unable, was never forbidden free burial in a certain section of the cemetery, did not make its operation 'exclusively' for charitable purposes." It is not the motive prompting the bequest, or the nature of the business in which the trustee is engaged, [1] but rather the use to which the bequest is to be applied that determines deductibility. Undoubtedly the decedent's bequest here was prompted by a spirit of generosity and benevolence, but the objects of his bounty were not ones for which the law permitted a deduction. As was stated by respondent in his brief: "* * * While petitioner's position may have a sympathetic appeal, the true avenue of relief in the same or similar situations lies in the realm of legislation." *84 We hold that respondent did not err in denying the deductions complained of, and that petitioner is not entitled to a refund of estate taxes paid in the amount of $1,163.05, or any other amount. Decision will be entered for the respondent. Footnotes
1. However, it was held in [Dec. 5194], that certain Masonic bodies there named were not operated exclusively for charitable purposes, and that a bequest to them was not deductible from decedent's estate tax.↩